IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| GEORGIOS MANOLAKAKIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| THE INSURANCE CORPORATION | ) |
| OF NEW YORK, | ) |
| | ) |
| Defendant. | ) |
| _____ | )   Case No: F99-0034 Civil |

**<u>REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFF'S ALTERNATE MOTION FOR SUMMARY JUDGMENT</u>**

Under <u>Peter v. Schumacher Enterprises, Inc.</u>, 22 P.3d 481 (Alaska 2001) it is undisputed that UM/UIM coverage that 'mirrors' the liability coverage must be offered by a liability insurer, and will be imputed in the policy unless waived <u>in</u> <u>writing</u> by the insured. It is likewise undisputed in this case that INSCORP did not offer, and Selmani did not waive in writing, UM/UIM coverage with limits that mirrored the liability limits -- $300,000 CSL. The closest thing that was even purportedly offered[1] was split limits coverage, with limits of $300,000/$500,000 which does not "mirror" the liability coverage.[2] Accordingly, and without regard to whether or not INSCORP complied with

---

[1] As plaintiff has pointed out previously, if it comes to an evidentiary hearing, the evidence will show that Selmani was not in fact offered any coverage other than that which he was issued, and the forms were pre-checked to select the only coverage that INSCORP was willing to provide.

[2] At p. 3 of its memorandum, INSCORP again asserts that "Mr. Selmani expressly and knowingly selected the lowest UM/UIM limit, rejecting all other levels of UM/UIM

the law in other respects given the fact that it was charging unapproved premiums, plaintiff is, at the very least, entitled to have the policy reformed to automatically include UM/UIM limits of $300,000 CSL.

INSCORP makes two arguments in opposition to this showing. First, it argues in bootstrapping fashion that because it did not have approved premiums for UM/UIM coverage with the limit of $300,000 CSL, it did not have to offer that coverage.[3] Second, it asserts that plaintiff's argument on this point arises out of an untimely motion. Neither argument has any merit.

    1.    <u>Failure to have approved rates for UM/UIM coverage with a limit of $300,000 CSL does not excuse INSCORP from complying with A.S. 21.89.020(c)(1) or the consequences of failing to do so under Peter v. Schumacher Enterprises.</u>

---

coverage" although plaintiff has repeatedly pointed out that this assertion is simply false. Neither Alaska law nor the Bethel Taxicab Ordinance required that Selmani carry any UM/UIM coverage, and the Alaska Insurance Code expressly authorizes him to waive UM/UIM coverage in its entirety. Accordingly, he clearly did not select the "lowest available UM/UIM limit" unless "available" is interpreted to mean what INSCORP was willing to sell, not what the law required. Is INSCORP admitting that the only options available to Mr. Selmani were to purchase no insurance from it or to purchase insurance with the liability limit of $300,000 CSL and UM/UIM limits of $50,000/$100,000?

[3] In fairness, plaintiff notes that INSCORP also argues that $300,000/$500,000 is the "mirror image" of $300,000 CSL coverage. See, INSCORP's opposition memorandum, p. 4. This argument is nonsensical on its face and it is difficult to respond to. The two coverages are not the same. In order to obtain a per person limit of $300,000 in UM/UIM coverage, the insured would be required to buy an additional $200,000 in per occurrence coverage, which would obviously increase the premium and make it less likely that the coverage would be purchased. The fact that, fortuitously, it would provide the same level of coverage where there was only a single victim of the accident is beside the point. The problem is not that the coverage was not selected, but rather that the coverage was not offered in the manner required by law with the consequence that it must be imputed into the policy.

INSCORP argues that it does not have to comply with the requirement of offering UM/UIM coverage that mirrors the liability coverage because it did not have approved premiums for such UM/UIM coverage. This argument is comparable to one that a person who drives a vehicle even though his or her license has been revoked is not guilty of driving without a license because it would not have been legally possible for him or her to obtain a license. The consequence of not having a driver's license is that one may not drive, or suffer the legal consequences if he or she does, not that one is excused from the requirement of having a license. Similarly, the consequence of not having approved rates for UM/UIM coverage with a limit of $300,000 CSL is that an insurer may not sell liability coverage with that limit, or, if it does, suffer the legal consequences of having that amount imputed in the UM/UIM coverage.

INSCORP also argues that it "is not permitted to offer coverage not approved by the Division" and therefore was not permitted to offer UM/UIM coverage with a limit of $300,000 CSL. INSCORP is correct in this assertion, but the result is that it is precluded from offering liability coverage with that limit unless it first obtains approved of rates for UM/UIM coverage with that limit. INSCORP's argument is a totally bootstrapping attempt to justify a violation of A.S. 21.89.020(c)(1) and the consequences of that violation under <u>Peter v. Schumacher</u> on the basis of its own failure to obtain approval of rates for coverage that it was required by law to offer.

Finally, INSCORP's argument (p. 6, n. 3) to the effect that the Division has somehow approved its failure to offer UM/UIM coverage that mirrored the liability limits ($300,000 CSL) since it approved rates that did not contain coverage with such

Reply Memorandum in Support of Plaintiff's
Amended Motion for Summary Judgment                                                3 -

limits is unavailing. There is nothing illegal about not offering UM/UIM coverage with a limit of $300,000 CSL. That is not one of the enumerated levels of coverage in the statute required to be offered. Rather, it is a "required" coverage only because it is coverage that mirrors the liability limit that INSCORP offered. The Division's approval of the rate schedule that did not include $300,000 CSL UM/UIM coverage (although not the schedule that INSCORP priced the insurance under) means only that INSCORP is precluded from offering liability coverage with such a limit or, if it does, that such coverage will be read into the policy unless offered and waived in writing, which was not done here.

Moreover, given the court's prior holding that the other levels of coverage that INSCORP was required to offer were not validly offered, there are two separate and distinct reasons why, at the very least, UM/UIM coverage with a limit of $300,000 CSL must be imputed into the policy. First, as plaintiff has noted from the beginning, UM/UIM coverage with limits equal to the liability limits is automatically imputed into the policy even under the law the preceded the statutory amendments to A.S. 21.89.020 where it is not offered. See, <u>Burton v. State Farm Fire and Cas. Co.</u>, 796 P.2d 1361 (Alaska 1990). Second, as plaintiff has also pointed out, INSCORP conceded in its briefing in the Supreme Court that, if it did not make a valid offer of the coverage levels required by the statute (as the court has now held) the appropriate remedy would be to automatically impute coverage equal to the liability limit - - $300,000 CSL - - and to impute higher limits only upon a showing that such higher limits would have actually been selected.

Reply Memorandum in Support of Plaintiff's
Amended Motion for Summary Judgment                                          4 -

2.   <u>Plaintiff raised the mirror issue in a timely fashion.</u>

The court's Minute Order dated May 9, 2005 (Docket No. 70) required the parties to file simultaneous cross motions for summary judgment by August 12, 2005, and further set out a briefing schedule with respect thereto. Said motions were in fact filed. Plaintiff argued that INSCORP had not made a valid offer of the required limits of UM/UIM coverage with the consequence that the policy should be reformed to impute the highest level of coverage required to be offered, $1 million/$2 million. INSCORP's motion took the position that it had a made a valid offer of coverage, and no limits above the $50,000/$100,000 facial limits of the UM/UIM coverage should be imputed. In his opposition to INSCORP's motion, plaintiff asserted a fallback position that, even assuming the "offer" of higher coverage made by INSCORP was legally sufficient, it did not include an offer of coverage equal to the liability limits - - $300,000 CSL - - and such coverage was not waived in writing, meaning that under A.S. 21.89.090(c)(1) and <u>Peter v. Schumacher Enterprises, Inc.</u>, <u>supra</u>, the policy must at the very least be reformed to impute $300,000 CSL in UM/UIM coverage.[4] See, Opposition to Motion for Summary Judgment, September 14, 2005, pp. 9-11, Exhibit A hereto.

In its November 10, 2005 Order, the court noted that plaintiff had raised the "mirror rule" issue but stated that "This argument is only presented in passing and needs

---

[4] This memorandum did not employ the term "mirror" but did cite <u>State Farm Mut. Auto Ins. v. Harrington</u>, 918 P.2d 1022 (Alaska 1996) where the term originated. However, in connection with the simultaneously pending motion regarding the sufficiency of INSCORP's responses to plaintiff's requests for admissions, which went to the issue of the "mirror rule", plaintiff again discussed the issue at pp. 1-3 of his October 17, 2005 memorandum and expressly quoted the 'mirror' language.

Reply Memorandum in Support of Plaintiff's
Amended Motion for Summary Judgment                                             5 -

further development before the court will be prepared to rule." Order, p. 4. Plaintiff interpreted this as a request or order for further briefing on the issue, and submitted said briefing in the form of an alternate motion for summary judgment that was filed on November 23, 2005. In denying reconsideration of the November 10, 2005 Order, the court noted on December 1, 2005 as follows:

> Thus, in the absence of a written waiver, which Plaintiff contends is not present in this case, reformation to equate UIM coverage with liability coverage is automatic. Plaintiff may be right and may ultimately prevail in connection with dispositive motions now pending but not yet ripe.

Order, p. 1. (Docket No. 102). Despite all this, defendant contends that the issue relating to the "mirror rule" was not timely raised. Plaintiff submits that INSCORP is wrong.

Assertion of the defense of the mirror rule in opposition to INSCORP's Motion for Summary Judgment was done in a timely fashion. While the issue did not receive extensive briefing by plaintiff, that was only because, in plaintiff's view, there are absolutely no factual disputes as to the absence of a written waiver of $300,000 CSL UM/UIM coverage, and no factual dispute that such coverage was not offered. Under those circumstances, Peter v. Schumacher Enterprises, supra, is flat out controlling on the issue. In any event, plaintiff has in substance supplemented his briefing on the issue at this point. The fact that the court desired more briefing on the subject does not alter the fact that plaintiff raised the issue in a timely fashion and documented his position with factual and legal authority sufficient to grant the motion, albeit in abbreviated fashion.

Plaintiff also notes that this court's order from chambers dated December 13, 2005 (Docket No. 105) references the pending alternate motion for summary judgment and

Reply Memorandum in Support of Plaintiff's
Amended Motion for Summary Judgment                                     6 -

states that "it has not escaped the Court's attention that the dispositive motions deadline has long since passed. *See* Docket No. 51." Docket No. 51 is June 28, 2002 pretrial order setting out various deadlines, including a dispositive motion deadline of July 30, 2003. The order was entered prior to certification of certain issues in this case to the Alaska Supreme Court. On September 6, 2002 INSCORP moved for an order staying all proceedings pending action by the Supreme Court, which the court granted on October 21, 2002. Docket No. 56. No subsequent pretrial order has been entered, and to the extent that the 2002 order established a July 30, 2003 deadline for dispositive motions, it has been obviated by the court's stay order and the subsequent order of May 9, 2005 (Docket No. 7) setting out a briefing schedule. Accordingly, plaintiff respectfully submits that the pending motion is not untimely under the order at Docket No. 51.

For the above reasons, plaintiff's Alternate Motion for Summary Judgment should be granted.

Respectfully submitted at Anchorage, Alaska this 6 day of January 2006.

    HEDLAND, BRENNAN & HEIDEMAN
    Attorneys for Plaintiff Georgios Manolakakis
    s/John S. Hedland
    Anchorage, Alaska 99501
    Phone: (907) 279-5528
    Fax: (907) 278-0877
    E-mail: jhedland@hbhc.alaska.net
    ABA No.: 690301

CERTIFICATE OF SERVICE
I hereby certify that on 1/6/05 a copy of the foregoing
was served electronically and by U.S. Mail on
Gary A. Zipkin, Esq.
Guess & Rudd, P.C.
510 L Street, 7th Floor
Anchorage, AK 99501
s/John S. Hedland

Amended Motion for Summary Judgment    7 -