IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| GEORGIOS MANOLAKAKIS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| THE INSURANCE CORPORATION OF NEW YORK, | ) ) ) |
| Defendant. | ) ) |

Case No: F99-0034 Civil

**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

1. <u>Plaintiff is entitled to maintain this action.</u>

INSCORP cites <u>In re: Alaback, et. al.</u>, 997 P.2d 1181, 1184 (Alaska 2000) and <u>City of St. Marys v. St. Mary's Native Corp.</u>, 9 P.3d 1002, 1009 (Alaska 2000) for the oft repeated assertions that a showing of standing requires "injury in fact" and that a party "must demonstrate a sufficient personal stake in the outcome of the controversy to ensure the requisite adversity" in order to have standing. These assertions do not get INSCORP anywhere, because it is obvious that Mr. Manolakakis has a sufficient stake to ensure adversity, since the outcome of the case will determine whether he has several hundred thousand dollars of additional insurance coverage available to satisfy his damages claims, and, if INSCORP wrongfully failed to offer the requisite coverage, he has sustained an injury in fact because the policy as written is insufficient to cover his damages. Defendant dovetails its argument on standing with an argument to the effect that Mr. Manolakakis cannot sue for breach for the implied covenant of good faith and fair dealing

EXHIBIT A
PAGE 1 OF 4

and existed long before the traffic regulations were even enacted. Nevertheless, the fact that the defendant violated the law is relevant on the question of whether it fulfilled its common law duty to act non-negligently. By the same token, in the instant case, on the question of whether INSCORP fulfilled its statutory duty under A.S. 21.89.020 to meaningfully offer UM/UIM coverage at various levels, evidence that it violated the law by pricing the coverage at illegal excessive rates in violation of another statutory provision is relevant, even though the cause of action itself is not created by the latter statute.

3. <u>Even if INSCORP did not violate A.S. 21.89.020 because of its illegal rate structure, the policy must be reformed to impute UM/UIM coverage with limits of $300,000.</u>

As plaintiff pointed out in the memorandum supporting his recent motion for partial summary judgment (p. 17, n. 8) even if INSCORP complied with the statutory amendment's requirement that coverage limits above the liability limits contained in the policy be offered, the law that preceded the amendment would still require imputation of policy limits equal to the liability limits, in this case $300,000. See <u>Burton v. State Farm Fire and Cas. Co.</u>, 796 P.2d 1361 (Alaska 1990). This is be true even if it is found that the illegal rate structure does not invalidate INSCORP's "offer" of the additional coverage. <u>Burton</u> made it clear that the remedy for failure to offer the required coverage was reformation of the policy, a holding that was reinforced in the subsequent decision in <u>State Farm Mut. Auto Ins. v. Harrington</u>, 918 P.2d 1022 (Alaska 1996) holding that

> If the required coverage is not waived it must be provided. If a policy does not provide required coverage it will be reformed to conform with statutory requirements.

Opposition to Motion for Summary Judgment         EXHIBIT __A__         - 9 -
                                                  PAGE _2_ OF _4_

918 P.2d at 1025.

What the court means by "required" coverage is coverage equal to the liability limits selected by the insured, which has to offered under A.S. 21.89.020(c)(1), as opposed to the higher "optional" limits that must be offered under A.S. 21.89.020(c)(2)(A) – (E). The court made this clear in Peter v. Schumacher Enterprises, Inc., 22 P.3d 481, 492 (Alaska 2001) where it stated as follows:

> The text of subsection (e) makes a distinction between "coverage required" and "optional limits." "Coverage required" must be waived in writing, but "optional limits" in the second sentence of (e) is a subject separate from required coverage. The "coverage required" by subsections (c) and (d) is UM/UIM for bodily injury and UM/UIM for property damage. This coverage must be purchased unless the buyer waives it in writing. If the coverage is not waived in writing, it must be for the minimum limits prescribed in subsection .020(c) and (d). The higher limits that must be offered under subsection .020(c)(2)(A) – (E) need not be accepted. They are thus optional rather than required.

Thus, the court held that the higher optional limits set out in .020(c)(2) do not have to be waived in writing, but the "coverage required" (i.e. UM/UIM coverage equal to the liability limits) could only be waived in writing.

It is absolutely clear in this case that not only did INSCORP not offer UM/UIM equal to the liability limits - - $300,000 CSL - - but also that Mr. Selmani did not reject, in writing, such coverage. See, Exhibit A, p. 51 to Plaintiff's Memorandum in Support of Motion for Partial Summary Judgment dated August 12, 2005, the purported selection/rejection sheet signed by Mr. Selmani that contains no option to select or reject $300,000 CSL coverage.

Opposition to Motion for Summary Judgment                           EXHIBIT __A__          - 10 -
                                                                    PAGE _3_ OF _4_

Since Mr. Selmani was not offered UM/UIM coverage that mirrored liability limits, and did not reject it in writing, it is absolutely clear under <u>Harrington</u> and <u>Schumacher</u> that this coverage must be imputed in the policy, regardless of whether INSCORP complied with the law in connection with the other levels of coverage that it claims to have offered Mr. Selmani. The conclusion is not dependant upon any demonstration that the rate structure was illegal or that its illegality invalidated the other offers of coverage.

4.  <u>Miscellaneous arguments</u>.

Plaintiff believes that the issue of the illegality of the INSCORP rate structure, and the employment of this structure with respect to the Selmani policy, is adequately covered in his Memorandum in Support of Motion for Partial Summary Judgment. INSCORP's argument on this point focuses almost solely on the question of whether Mr. Manolakakis can sue because Mr. Selmani was either charged too high a premium or not given enough coverage by virtue of the fact that the policy did not include UM/UIM property damage coverage. That analysis completely misses the point. The question is not whether Mr. Selmani has a claim for being over charged for the coverage actually purchased; the question is whether the coverage <u>not</u> purchased, that was required to be offered, could be considered to have been offered when its availability was conditioned upon paying <u>other</u> illegal and excessive rates. Plaintiff agrees that Mr. Manolakakis cannot maintain an action against INCORP to recover a premium overcharge made to Mr. Selmani, but that is not what is happening here. Mr. Manolakakis is suing for reformation